1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7     DAVID G. VELEZ,                          Case No.13-cv-02834-EDL
8                  Plaintiff,
                                               **ORDER FOLLOWING REVERSAL**
9            v.                                **AND REMAND**
10    BANK OF AMERICA , N.A., et al.,
11                 Defendants.
12
13    **I.      Introduction**
14            This is a mortgage case brought by Plaintiff David Velez against Defendants Bank of
15    America N.A. ("B of A"), J.P. Morgan Chase N.A. ("Chase"), California Reconveyance Company
16    ("CRC"), and Mortgage Electronic Registration Systems, Inc. ("MERS") on June 20, 2013.  Dkt.
17    No. 1.  On December 18, 2013, another judge in this district granted Defendants' motions to
18    dismiss the complaint and Plaintiff filed an amended complaint.[1]  See Dkt. Nos. 63, 72.  The
19    amended complaint asserted claims for wrongful foreclosure, slander of title, violation of
20    California Civil Code §2923.5, violation of 12 U.S.C. §2605, violation of 18 U.S.C. §1962,
21    violation of California Business & Professions Code § 17200, violation of 15 U.S.C. § 1601, and
22    injunctive relief.  On April 11, 2014, the Court dismissed the amended complaint in its entirety
23    with prejudice and entered judgment in favor of Defendants.  Dkt. Nos. 94, 95.  Plaintiff appealed
24    the dismissal and on May 20, 2016 the Ninth Circuit reversed and remanded the case for
25    reconsideration in light of Yvanova v. New Cent. Mort. Corp., 62 Cal. 4th 919 (Feb. 18, 2016).

26    _____

27    [1] This case was originally assigned to Judge Grewal, who presided over the case through
      dismissal.  However, Judge Grewal subsequently left the federal bench and the case was
28    reassigned upon remand.

United States District Court
Northern District of California

1    See Dkt. No. 102.

2         Upon remand, and as suggested by the parties in a joint submission, this Court ordered the

3    parties to file the same briefs on the impact of Yvanova that they had previously submitted to the

4    Ninth Circuit.  See Dkt. Nos. 110, 111.  Thereafter, both sides submitted the briefs that they had

5    previously submitted to the Ninth Circuit in response to its Order to Show Cause, and Plaintiff

6    also submitted an additional brief.  See Dkt. Nos. 112, 115, 116.  In light of Plaintiff's additional

7    submission, the Court allowed Defendants to file supplemental briefing as well.  Dkt. No. 119.

8         Following the parties' submissions, numerous California state and federal courts have

9    opined on the impact of Yvanova and other issues relevant to this dispute.  Having considered the

10   briefs submitted by the parties as well as more recent caselaw, for the reasons discussed below this

11   Court concludes that Yvanova does not change the result of the Court's prior decision to dismiss

12   seven of Plaintiffs' claims based on lack of standing:  breach of express agreement, breach of

13   implied agreement, slander of title, wrongful foreclosure, violations of California Civil Code §

14   2923.5, RICO violations, and Unfair Competition Law ("UCL") violations.   Further, Plaintiff did

15   not appeal the Court's dismissal of his claims for violation of the Real Estate Settlement

16   Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*., the Truth in Lending Act ("TILA"), 15

17   U.S.C. § 1601, *et seq*., and injunctive relief with prejudice.  Moreover,  the Ninth Circuit did not

18   indicate that this Court should reconsider the original dismissal order on any basis other than

19   Yvanova, and Plaintiff did not challenge the propriety of dismissal of the RESPA, TILA or

20   injunctive relief claims on remand.  Plaintiffs' complaint is therefore dismissed with prejudice in

21   its entirety.

22   **II.     Amended Complaint**

23        According to the first amended complaint ("FAC"), Plaintiff is the Trustor/Borrower on a

24   Deed of Trust ("DOT") recorded on or about November 15, 2006.  FAC ¶ 15.  The DOT names

25   Plaza Home Mortgage, Inc. as the lender, Financial Title as the Trustee, and MERS as the

26   nominee for Lender and Lender's successors and assigns.  Plaintiff alleges on information and

27   belief that after Plaintiff entered into the DOT, Plaza sold the DOT and Note to a mortgage-backed

28   securitized trust, WMALT 2007-OA3 Trust, a Real Estate Mortgage Investment Conduit

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  organized under the law of the State of New York and registered with the Securities and Exchange

2  Commission ("the SEC').  FAC ¶ 16, Ex. A.

3      Plaintiff alleges on information and belief that his Note and DOT were securitized pursuant

4  to a Pooling and Servicing Agreement ("PSA") of the WMALT 2007-OA3 Trust with LaSalle

5  acting as Trustee of the Trust Pool.  FAC ¶ 17.  According to Plaintiff, Section 2.05 of the

6  WMALT 2007-OA3 Trust PSA required the delivery and depositing of all mortgage files with the

7  trustee by the Closing Date of March 28, 2007.  FAC ¶18; PSA at 177.  The mortgage file was

8  required to include a mortgage note endorsed to the Trustee, the Trust Pool, or in blank.  Id. at

9  105.  Plaintiff alleges that, despite the closing date of the PSA, Plaza failed to timely transfer his

10  DOT to the Trust Pool in accordance with its purported sale of Plaintiff's Deed of Trust to the

11  WMALT 2007-OA3 Trust in 2007.  FAC ¶ 19.  Specifically, Plaintiff alleges that Defendants

12  violated Section 2.05 of the PSA when MERS attempted to transfer the DOT to LaSalle as Trustee

13  of the Trust Pool in 2009, two years after the closing date, and LaSalle accepted that transfer.

14  FAC ¶ 20, Ex. D; see also FAC ¶ 24 ("on or about January 31, 2009, two years after the Trust Pool

15  had closed and more than one year after the Trust Pool dissolved, MERS executed an Assignment

16  of Deed of Trust in which it purported to grant, assign and transfer all beneficial interest in the

17  [DOT] to LaSalle as Trustee for the WMALT 2007-OA3 Trust.  The Assignment, recorded on

18  February 3, 2009, failed because the WMALT 2007-OA3 Trust was dissolved on March 28, 2008,

19  and thus it could not receive the Plaintiff's DOT.").

20      Plaintiff further alleges that the WMALT 2007-OA3 Trust filed a Form 15 "Certification

21  and Notice of Termination" with the SEC on January 5, 2008.  FAC ¶ 22.  Then, "on March 28,

22  2008, the WMALT 2007-OA3 Trust filed its final Form 10-k with the SEC and was dissolved.

23  This act terminated all interest of the Trust Pool in Plaintiff's mortgage and terminated the

24  servicing rights of LaSalle and Defendant Bank of America as purported successor in interest to

25  LaSalle. According to New York State Law, all assets of a dissolved trust are immediately

26  distributed to the certificate-holders of the former trust and the trustee lost all power to act as

27  Trustee of the Trust Pool.  At that time, the Pooling and Servicing Agreement came to an end as

28  one of the parties to the agreement no longer legally existed. Chase, however, ignored this fact and

1    continued to act as if the securitization process had not occurred." FAC ¶ 21. On October 1, 2008,

2    Chase began sending monthly mortgage statements to Plaintiff and Plaintiff made the demanded

3    payments to Chase. FAC ¶ 23.

4         Plaintiff further alleges that the Substitution of Trustee, recorded on February 3, 2009 and

5    appointing CRC as trustee under the Deed of Trust also failed, because it was executed by LaSalle

6    as Trustee for the Trust Pool despite the fact that MERS's assignment of interest to LaSalle in

7    2009 failed as the Trust Pool was no longer in existence and had no power to appoint a new trustee

8    under the Deed of Trust. AFC ¶ 26. Thus, according to Plaintiff, the subsequent initiation of

9    foreclosure proceedings and Notices of Default and Trustee's Sale were invalid because CRC was

10   never validly substituted in as trustee under the DOT. FAC ¶ 27.

11   **III.    Prior Order Dismissing Complaint With Prejudice**

12         **A.    Factual Background**

13         In the April 11, 2014 order dismissing the case with prejudice, the Court summarized the

14   relevant facts as follows:

15         On November 8, 2006, Velez obtained a loan from Plaza Home Mortgage, Inc., ("Plaza
     Home"). At that time, Velez signed a Deed of Trust ("DOT") against 2180 Wynfair Ridge
16   Way, San Jose, CA 95138 ("the Property") to secure a Promissory Note ("Note") in the
     amount of $1,500,000 as part of the loan agreement. The Note listed MERS as beneficiary
17   and was recorded on November 15, 2006.

18         On January 31, 2009, MERS recorded a transfer of the DOT and Note to LaSalle Bank
     ("LaSalle"), as Trustee for Washington Mutual Mortgage Pass-Through Certificates
19   WMALT Series 2007-OA3 Trust.

20         On February 3, 2009, a Substitution of Trustee was recorded in connection with the DOT,
     substituting in CRC as Trustee. On the same day, CRC requested the recording of a Notice
21   of Default and Election to Sell Under Deed of Trust, which was recorded on the same day.
     On October 12, 2011, CRC requested and recorded the first of three Notices of Trustee's
22   Sale in connection with the DOT. The sales were scheduled for November 12, 2010, April
     1, 2011, and November 2, 2011, but have not yet taken place.
23

24   Dkt. No. 94 at 2. Neither side has challenged this summary of facts, and it is thus undisputed that

25   no foreclosure has taken place yet.

26         **B.    Legal Conclusions**

27         In dismissing the amended complaint with prejudice, the district court held that:

28         This district has consistently rejected attempts to challenge foreclosures based on

United States District Court
Northern District of California

4

1  
2  
3  
4  
5  
6  

> the securitization of loans because plaintiffs almost always lack standing as third-parties to the contract. Velez' original complaint relied on exactly that type of challenge, and the same theory undergirds its present iteration. The state of the law in this district has not changed. Now, as before, it is "patently incorrect" that Velez has standing to challenge the securitization agreement. Nguyen v. JP Morgan Chase Bank, N.A., Case No. 5:12-cv-04183, 2012 WL 4942816, at *3 (N.D. Cal. Oct. 17, 2012). As in his prior complaint, without standing to challenge the securitization process, seven of Velez' causes of action fail: breach of express agreement, breach of implied agreement, slander of title, wrongful foreclosure, violations of Cal. Civ. Code Section 2923.5, RICO violations, and UCL violations. These causes of action are dismissed.

7    Dkt. No. 94 at 4.

8         The Court also dismissed Plaintiff's sixth claim violation of RESPA for lack of specificity

9    and conclusory allegations of pecuniary harm. Id. at 5. The Court further dismissed the ninth

10   claim for violation of TILA for failure to allege at what point Plaintiff eventually learned of the

11   transfer to enable the Court to meaningfully evaluate Plaintiff's diligence in bringing the claim.

12   Id. The Court dismissed the tenth claim for injunctive relief on the basis that all of the other

13   claims had been dismissed. Id. As this was Plaintiff's second chance at pleading, the Court

14   concluded that any further amendment would be futile and dismissed the action in its entirety with

15   prejudice. Id.

16   **IV.    Ninth Circuit's Order of Reversal and Remand**

17        The Court's order of dismissal was filed and judgment was entered on April 11, 2014.

18   Plaintiff timely appealed the decision to the Ninth Circuit, arguing that the Court erred by

19   conflating his standing to challenge a foreclosure with his standing to challenge a mortgage

20   securitization agreement, and therefore failed to address two theories of liability that were separate

21   from his arguments relating to the failed securitization of his loan, specifically Defendants' lack of

22   standing to foreclose because: (1) their purported authority was based on assignment to a

23   dissolved and non-existent trust, and (2) the documents on which the foreclosure was based were

24   "robo-signed." Both sides briefed the appeal and the case was set for a July 5, 2016 oral argument

25   before the Ninth Circuit.

26        While the case was pending before the Ninth Circuit, on February 18, 2016 the California

27   Supreme Court issued a decision in Yvanova v. New Cent. Mort. Corp., 62 Cal. 4th 919 (Feb. 18,

28   2016). In Yvanova, the California Supreme Court addressed the following issue: "In an action for

United States District Court  
Northern District of California

5

wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"  Id. at 926.  The California Supreme Court answered this narrow question affirmatively while stressing the narrowness of its holding:

> Our ruling in this case is a narrow one. We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment.  We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed.  Nor do we hold or suggest that plaintiff in this case has alleged facts showing the assignment is void or that, to the extent she has, she will be able to prove those facts.  Nor, finally, in rejecting defendants' arguments on standing do we address any of the substantive elements of the wrongful foreclosure tort or the factual showing necessary to meet those elements.

Id. at 924.

On May 2, 2016, the Ninth Circuit issued an Order to Show Cause why the Court's judgment should not be reversed and remanded for reconsideration in light of Yvanova.  The parties submitted additional briefing to the Ninth Circuit on the impact of Yvanova.  After receiving these briefs, the Ninth Circuit summarily summarily reversed the district court decision and remanded the case for reconsideration in light of Yvanova.  Thus the question before this Court is whether, following Yvanova, Plaintiff's claims for breach of express agreement, breach of implied agreement, slander of title, wrongful foreclosure, violations of California Civil Code section 2923.5, RICO violations, and UCL violations were properly dismissed with prejudice for lack of standing.

**V.      Discussion**

      **A.      Yvanova Does Not Apply to This Pre-Foreclosure Case**

The parties dispute whether Yvanova is applicable to this case, where no foreclosure has yet occurred.  Yvanova described its holding as "narrow" and expressly stated that: "We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed."  Yvanova, 62 Cal. 4th at 924; see also id. at 934 (declining to opine on the correctness of the holding in Jenkins v. JP Morgan Chase Bank N.A., 216 Cal. App. 4th 497, 513-15 (2013) that disallowed the use of a lawsuit to preempt a

United States District Court
Northern District of California

1   nonjudicial foreclosure); id. at 937 (internal citation omitted) ("A foreclosed-upon borrower

2   clearly meets the general standard for standing to sue by showing an invasion of his or her legally

3   protected interests -- the borrower has lost ownership to the home in an allegedly illegal trustee's

4   sale.").

5          Plaintiff argues nevertheless that Yvanova should be extended to this pre-foreclosure case.

6   See Dkt. No. 113 at 7-10.  Plaintiff acknowledges that the California Supreme Court's holding

7   does not expressly extend beyond a borrowers standing in post-foreclosure cases, but contends

8   that it "does not make sense that the Yvanova Court would stand up for borrowers having this

9   power [to challenge their loans as void when they are improperly transferred to securitized trusts],

10  only to contradict that philosophy by saying those same borrowers should be unable to use it" until

11  after they are rendered homeless.  Id. at 8.

12         While Plaintiff's position has some emotional appeal, in concluding that borrowers who

13  have suffered a nonjudicial foreclosure have standing to sue for wrongful foreclosure based on an

14  allegedly void assignment, the Yvanova court relied in part on the prejudice to the borrowers of

15  foreclosure and resulting loss of home as an injury sufficiently concrete and personal to afford

16  standing.  See Yvanova, 64 Cal. 4th at 937.  This injury would not exist for a borrower who has

17  not yet been foreclosed upon, and therefore the rationale for extending standing to borrowers who

18  have been foreclosed upon is absent in the pre-foreclosure process.

19         Plaintiff also contends that the California Supreme Court intended for the lower courts to

20  work out the contours of foreclosure challenges following Yvanova.  He points to the California

21  Supreme Court's recent decision to summarily reverse and remand Keshtgar v. U.S. Bank, 226

22  Cal. App. 4th 1201 (2014), a pre-foreclosure decision holding that a borrower could not challenge

23  a transfer as void where the loan was sold to a trust without timely transfer of the deed of trust, for

24  reconsideration in light of Yvanova, as evidence that the Supreme Court did not intend to limit

25  Yvanova to post-foreclosure cases.  However, on remand from the California Supreme Court, the

26  court of appeals in Keshtgar recently concluded that Yvanova has no bearing on the action

27  because it applies only to actions alleging wrongful foreclosure, not those attempting to preempt

28  foreclosure, and so affirmed its judgment in favor of the defendants.  See Keshtgar v. U.S. Bank,

1    N.A., 2016 WL 4183750 (Cal. Ct. App. Aug. 8, 2016).  Thus, Keshtgar does not help Plaintiff.

2        In addition to Keshtgar, another recent California appellate case, Saterbak v. JP Morgan

3    Chase Bank N.A., 245 Cal. App. 4th 808, 815 (2016), also considered the propriety of pre-

4    foreclosure actions following Yvanova.  Saterbak held that Yvanova was expressly limited to the

5    post-foreclosure context and did not alter the standing obligations of a borrower bringing a pre-

6    foreclosure suit, and concluded that borrowers lack standing to pursue preemptive challenges.  In

7    April and July 2016 respectively, the California Supreme Court declined to rehear or review the

8    appellate court's decision in Saterbak.  See Saterbak v. JP Morgan Chase Bank, S234109, pet. for

9    review and depub. denied (Cal. Sup. Ct. 2016).  The California Supreme Court's very recent

10   decisions not to reconsider either Keshtgar or Saterbak on the merits or de-publish Saterbak

11   supports Defendants' position that the Court would hold that Yvanonva does not extend to pre-

12   foreclosure preemptive actions.

13       After the parties filed their briefs, several more courts have concluded that Yvanova does

14   not impact the rule that a party may not make preemptive foreclosure challenges in court.  See,

15   e.g., Zappia v. World Savings Bank, FSB, 2016 WL 4479398, at *3 (S.D. Cal. Aug. 25, 2016)

16   (granting motion to dismiss with prejudice because leave to amend to assert wrongful foreclosure

17   claim would be futile where no foreclosure had occurred); Saterbak v. National Default Servicing

18   Corp., 2016 WL 4430922, at *6 (S.D. Cal. Aug. 22, 2016) (plaintiff lacked standing to challenge

19   assignment of deed of trust where foreclosure had not yet occurred).  Following the reasoning of

20   these courts, this Court concludes that Yvanova does not impact the Court's analysis of Plaintiff's

21   standing to challenge the foreclosure process in this pre-foreclosure case.

22       **B.      Even If Yvanova Applied, Plaintiff Cannot State a Claim that the Assignment**

23       **Was Void, Rather than Voidable, To Confer Standing**

24       Plaintiff correctly argues that the California Supreme Court expressly disapproved of the

25   holding in Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497 (2013), that borrowers

26   lack standing to challenge even void assignments of their deeds of trust, and affirmed the

27   conflicting holding in Glaski v. Bank of America, 218 Cal. App. 4th 1079 (2013), that "a borrower

28   may base a wrongful foreclosure claim on allegations that the foreclosing party acted without

United States District Court
Northern District of California

8

authority because the assignment by which it purportedly became beneficiary under the deed of trust was not merely voidable but void." See Yvanova, 62 Cal. 4th at 930, 939.  Plaintiff contends that the district court's decision to dismiss his claims with prejudice was based on the now-erroneous legal conclusion that Plaintiff lacked standing to pursue his claims even though he alleged that the assignment of the deed of trust was void because: (1) the loan was assigned to a securitized trust which had previously been dissolved, (2) the loan was assigned to a securitized trust after its closing date, or (3) that the assignment was "robo-signed."  See generally Dkt. No. 112.

Even if Yvanova were applicable to this pre-foreclosure lawsuit, for the reasons discussed below all of Plaintiffs pre-sale claims still fail because Plaintiff has not sufficiently alleged any facts showing that the assignment could be considered void, as opposed to merely voidable.  The Yvanova court did not reach the merits of case before it, and expressly declined to "hold or suggest that plaintiff in this case has alleged facts showing the assignment is void or that, to the extent she has, she will be able to prove those facts." 62 Cal. 4th at 924.  Thus, Yvanova did not resolve the questions presented here, but subsequent caselaw indicates that Plaintiff's allegations do not render the ADOT void such that he could have standing to challenge the resulting foreclosure based on the ADOT process.

### 1. The FAC Does Not Plausibly Allege Assignment After Dissolution of the Trust to Render the Assignment Void

Plaintiff alleges that the securitized trust at issue, WMALT 2007-OA3, filed a "Form 15 'Certification and Notice of Termination'" on January 5, 2008, filed a final Form 10K, and was dissolved on March 28, 2008.  See FAC ¶¶21-22.  On or about January 31, 2009, MERS executed an ADOT in which it purported to transfer its interest to LaSalle as Trustee for the WMALT 2007-OA3 trust.  FAC ¶24.  Plaintiff's theory is that the ADOT failed because the WMALT 2007-OA3 trust had previously been dissolved and thus could not receive Plaintiff's DOT.  Id.

However, Plaintiff's allegations that the DOT was transferred to a dissolved securitized trust are overly conclusory and contradicted by judicially noticed facts, and thus need not be taken as true even on a motion to dismiss.  Specifically, the "Form 15" on which Plaintiff's complaint

United States District Court
Northern District of California

relies[2] does not purport to terminate the trust itself, but instead terminates its SEC registration and reporting obligations.  See, e.g., Gorgoni v. OneWest Bank FSB, 2013 WL 1278475, at *1 (N.D. Ill. Mar. 28, 2013) (claims dependent on allegation that trust's de-registration with SEC terminated the trust itself were "ridiculous"); see also 17 C.F.R. 240.12g-4; 17 C.F.R. 240.12h-3. Further, the filing of the Form 15 and the resulting de-registration with the SEC explains why the March 2008 Form 10K was the trust's final SEC annual report, and does not tend to show that the trust was dissolved.  Considering the allegations of the FAC along with the Form 15 and the 10K, Plaintiff's allegation that the trust was dissolved on January 5, 2008 is implausible.

Moreover, Defendants argue that even taking Plaintiff's allegations as true, at best they show that the ADOT was not recorded until 2009 (and according to Plaintiff the trust was allegedly dissolved in 2008), but "assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded.  The lender could readily have assigned the promissory note . . . . in an unrecorded document" prior to dissolution of the trust.  See Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 272 (2011).  Thus, the date of recordation does not tend to show that the trust was dissolved prior to the assignment.  Cf., Spangler v. Selene Finance LP, 2016 WL 3951654, at *3 (July 22, 2016) (argument that assignment was untimely because it was recorded after foreclosure sale failed because the assignment was executed six days before the foreclosure and an assignment of deed of trust need not be recorded to become effective).  This also weighs against the plausibility of Plaintiff's timing allegations.

In sum, Plaintiff's reliance on allegations that the DOT was assigned to a dissolved trust are implausible and cannot support an argument that the timing rendered the ADOT void.

### 2.    Post-Closing Transfer to A Securitized Trust Would Render the Assignment Voidable, Not Void, Under New York Law

---

[2] The Court may consider this document under the doctrine of incorporation by reference because it is referred to in the complaint but not attached thereto, and also under the doctrine of judicial notice because it is a public record and neither side disputes the accuracy of the document. Plaintiff does not dispute that judicial notice is appropriate.  The district court previously took judicial notice of these documents, as well as several others, in deciding a previous motion to dismiss.  See Dkt. No. 63 at 4-5.

United States District Court
Northern District of California

1          Plaintiff also argues that the ADOT was void because it occurred after the closing date

2  contained in the relevant trust's PSA.[3]  Plaintiff points out that <u>Yvanova</u> "left aside the question of

3  whether a deed of trust transferred to a securitized trust after its closing date became void."  Dkt.

4  No. 113 at 3.  Plaintiff argues that <u>Yvanova</u> therefore did not impact the California appellate

5  court's earlier decision in <u>Glaski v. Bank of America</u>, 218 Cal. App. 4th 1079 (2013).  <u>Glaski</u> held

6  that such a transfer was "void" as an act in contravention of the trust document under the plain

7  language of the relevant New York statute, Estates, Powers & Trusts Law ("E.P.T.L.") 7-2.4,

8  which provides that "every sale, conveyance, or other act of the trustee in contravention of the

9  trust . . . is void."[4]  Plaintiff argues that this Court should follow <u>Glaski</u> and find the ADOT at

10  issue here void as opposed to voidable, so he has standing.

11          Plaintiff acknowledges that the case of <u>Wells Fargo Bank, N.A. v. Erobobo</u>, 972 N.Y.S.2d

12  147 (Sup. Ct. 2013), cited by <u>Glaski</u> to support its conclusion that the assignment was void as

13  opposed to voidable, has subsequently been reversed.  <u>See Wells Fargo Bank, N.A. v. Erobobo</u>,

14  127 A.D.3d 1176, 1178 (N.Y. App. Div. Apr. 29, 2015) (reversing lower court decision and

15  holding that a mortgager whose loan was owned by a trust "did not have standing to challenge [the

16  bank's] possession or status as assignee of the note and mortgage based on purported

17  noncompliance with certain provisions of the PSA").  However, Plaintiff argues that <u>Glaski</u> only

18  cited the now-reversed lower court <u>Erobobo</u> decision "in solidarity," rather than reliance, and in

19  fact <u>Glaski</u> relied on the plain language of the New York statute rather than New York case law to

20  decide that the assignment was void rather than voidable.  Thus, according to Plaintiff, <u>Erobobo</u>'s

21  reversal does not impact the strength of <u>Glaski</u>'s conclusion that a transfer to a dissolved trust

22  renders the assignment void under the literal language of the New York statute.

23          However, in <u>Saterbak v. JP Morgan Chase Bank, N.A.</u>, 245 Cal. App. 4th 808, 815 (2016),

24

25  [3] In addition to the brief Plaintiff submitted to the Ninth Circuit in this case, he also presented this

26  Court with a brief that his attorney submitted to the Ninth Circuit in another case on June 30, 2016.  <u>See</u> Dkt. No. 113.  In that brief, Plaintiff expands significantly on his arguments relating to

27  this issue and those arguments are addressed herein as they relate to Plaintiff in this case.

28  [4] There is no dispute that the securitized trust in question was formed under the law of New York and New York law governs it.  <u>See</u> FAC ¶ 16.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    a California Court of Appeal decision post-dating <u>Yvanova</u>, the court concluded that transfer of a

2    deed of trust to a securitized trust in an untimely manner under the terms of a PSA would render

3    an assignment "merely voidable" rather than void under New York law.  <u>Saterbak</u> acknowledged

4    the conflicting holding in <u>Glaski</u>, but determined that <u>Glaski</u> relied on <u>Erobobo</u>, and that

5    <u>Erobobo</u>'s subsequent reversal impacted the strength of <u>Glaski</u>'s holding.  <u>Saterbak</u> rejected

6    <u>Glaski</u> and instead relied on <u>Rajamin v. Deutsche Bank National Trust Co</u>., 757 F.3d 79, 81-84,

7    88-90 (2d Cir. 2014), where the Second Circuit evaluated New York law to conclude that the late

8    assignment of a deed of trust to a securitized trust should render it merely voidable, not void.  245

9    Cal. App. 4th at 815.

10        Plaintiff contends that <u>Rajamin</u> is irrelevant to <u>Glaski</u>'s conclusion because <u>Glaski</u> was not

11    concerned with case law, and asserted the right of California courts to interpret New York

12    statutory law for themselves – rather than rely on New York caselaw – where California properties

13    have been assigned to New York trusts.  Plaintiff points out that <u>Glaski</u> considered <u>Rajamin</u> and

14    similar cases but decided not to follow them and instead interpreted the statute literally, and urges

15    this Court to ignore relevant New York caselaw as well as <u>Saterbak</u> and the California cases

16    following it, and look only at the New York statute in a vacuum.

17        Further, Plaintiff's counsel argues that <u>Rajamin</u>'s real holding related to standing ("only

18    the intended beneficiary of a private trust may enforce the terms of the trust"), and its conclusion

19    that a violation of E.P.T.L. 7-2.4 does not render a deed of trust void was mere dictum.  However,

20    the Court will not ignore this portion of the Second Circuit's decision as it is highly relevant to

21    this Court's evaluation of the issue.  The fact that both a New York appellate court and the Second

22    Circuit have interpreted the same New York statute at issue here, E.P.T.L 7-2.4, to mean that an

23    untimely assignment to a securitized trust renders the assignment void, lends significant weight to

24    the conclusion that <u>Glaski</u> was wrongly decided.

25        Moreover, where there is no express guidance from the state supreme court, a district court

26    must follow state appellate court decisions "unless the federal court finds convincing evidence that

27    the state's supreme court likely would not follow it."  <u>Ryman v. Sears, Roebuck & Co</u>., 505 F.3d

28    993, 994 (9th Cir. 2007).   Here, the recent trend of California appellate cases is to hold that <u>Glaski</u>

1   was wrongly decided and an assignment that post-dates the closing date in a PSA is voidable, not

2   void, under New York law.  See, e.g., Piana v. Select Portfolio Servicing, Inc., 2016 WL 448523,

3   at *3 (Aug. 24, 2016); Yhudai v. Impac Funding Corp., 1 Cal. App. 5th 1252 (July 29, 2016); see

4   also Spangler v. Selene Finance LP, 2016 WL 3951654, at *4 (N.D. Cal. July 22, 2016) (listing

5   cases).

6          Further, the California Supreme Court's recent refusal to reconsider the merits of several

7   post-Yvanova appellate court decisions rejecting Glaski and finding voidable assignments

8   indicates that the Court would likely agree with Saterbak and its progeny, Rajamin, and the New

9   York appellate court decision in Erobobo, that an untimely transfer to a loan trust is voidable

10  rather than void under New York law, and therefore legally insufficient to afford standing to a

11  borrower seeking to challenge a loan assignment based on non-compliance with a PSA closing

12  date.  On July 13, 2016 the California Supreme Court denied a petition for review and request to

13  depublish Saterbak, which suggests a tacit approval of Saterbak's post-Yvanova rejection of

14  Glaski.  See Saterbak v. JP Morgan Chase Bank, S234109, pet. for review and depub. denied (Cal.

15  Sup. Ct. Jul. 13, 2016); DiGenova v. State Bd. Of Ed., 57 Cal. 2d 167, 178 (1962) (though denial

16  of a hearing is not an express approval of a lower court decision, "it does not follow that such a

17  denial is without significance as to our views"); People v. Hasson, 265 Cal. App. 2d 865, 866

18  (1968) (where the court of appeal was divided, the failure of the Supreme Court to grant a hearing

19  could be construed as "a decision by that court in accordance with the majority opinion in the

20  Court of Appeal").  The California Supreme Court acted similarly in two other cases rejecting

21  Glaski -- Keshtgar v. U.S. Bank, N.A., 226 Cal. App. 4th 1201, 1207 (2014) and Mendoza v. JP

22  Morgan Chase Bank, N.A., 228 Cal. App. 4th 1020 (2014) -- where the California Supreme Court

23  initially granted hearings but later decided to summarily remand the cases back to the appellate

24  courts for reconsideration in light of Yvanova.  See Keshtgar, 368 P.3d 921 (Cal. Sup. Ct. Apr. 27,

25  2016); Mendoza, 368 P.3d 921 (Cal. Sup. Ct. Apr. 27, 2016).

26          Finally, following Yvanova, the Ninth Circuit has also recently held that when "an act in

27  violation of a trust agreement is voidable – not void – under New York law," the borrower lacks

28  standing.  See Morgan v. Aurora Loan Svcs. LLC, 2016 WL 1179733, at *2 (9th Cir. Mar. 28,

United States District Court
Northern District of California

1    2016); Barcarse v. Central Mortgage Co., 2016 WL 4784043 (9th Cir. Sept. 14, 2016) (dismissing

2    claims for wrongful foreclosure, declaratory relief, quiet title and fraudulent business practices due

3    to lack of standing because allegations that defendants violated terms of PSA would make late

4    transfers voidable, not void, under New York law; see also Patel v. U.S. Bank, N.A., 2016 WL

5    4013861 (N.D. Cal. July 27, 2016) (on summary remand from the Ninth Circuit for

6    reconsideration in light of Yvanova, analyzing Rajamin and holding that "the weight of the

7    authority demonstrates that an assignment done in violation of the PSA is merely voidable, not

8    void, under New York law" and therefore the plaintiff lacked standing to challenge an assignment

9    of a deed of trust); Reed v. Wilmington Trust N.A., 2016 WL 3124611, at *5 (N.D. Cal. June 3,

10   2016) (citing Morgan to conclude that Plaintiff could not state claim for wrongful foreclosure

11   based on allegations that the transfer was made after the closing date of the PSA).

12          This Court agrees with the reasoning of the New York, California and Ninth Circuit

13   caselaw discussed above, and concludes that an ADOT that occurs after the closing date of a

14   securitized trust renders the assignment voidable, as opposed to void, under New York law, and

15   therefore Plaintiff lacks standing to challenge any resulting foreclosure on this basis.

16                    **3.      Robo-Signing Would Only Render the Assignment Voidable**

17          In their brief to the Ninth Circuit, JP Morgan and CRC argued that Plaintiff waived any

18   argument relating to "robo-signing" by failing to raise the issue in opposition to Defendants'

19   motion to dismiss before the district court in the first instance, and further contend that he

20   expressly relinquished the argument at oral argument.  See Dkt. No. 116 at 10 n.8.  Plaintiff does

21   not include any argument relating to "robo-signing" in the briefs presented to this Court following

22   appeal.  It therefore appears that Plaintiff has abandoned any reliance on a theory of robo-signing.

23          Even if the Court were to consider the issue, and take as true Plaintiff's allegation that an

24   improper robo-signing occurred, this would renders the ADOT voidable and not void, and

25   therefore Plaintiff still lacks standing under Yvanova.  See, e.g., Barcarse v. Central Mortgage Co.,

26   2016 WL 4784043 (9th Cir. Sept. 14, 2016) (robo-signature would not render transfer of debt void

27   because a signature by an unauthorized party on a negotiable instrument is subject to ratification);

28   Mills v. JP Morgan Chase Bank, N.A., 2016 WL 4595222, at *3 (E.D.Cal. Sept. 1, 2016)

United States District Court
Northern District of California

(dismissing wrongful foreclosure claim with prejudice following <u>Yvanova</u> because "allegations of robo-signing, even if true, render an assignment only voidable" and therefore the plaintiff lacked standing); <u>Pratap v. Wells Fargo Bank, N.A.</u>, 63 F. Supp. 3d 1101, 1109 (N.D. Cal. 2014).

## VI.    CONCLUSION

Dismissal of Plaintiff's complaint with prejudice remains warranted after <u>Yvanova</u>.


**IT IS SO ORDERED.**

Dated: September 28, 2016



ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California